### UNITED STATES v. ONE 1936 MODEL FORD DE LUXE TUDOR AUTOMOBILE.
#### No. 1156.

District Court, N. D. Georgia, Atlanta Division.

Jan. 10, 1938.

Clint W. Hager and J. D. Tindall, both of Atlanta, Ga., for petitioner Automobile Financing, Inc.

Lawrence S. Camp, U. S. Atty., and J. Ellis Mundy, Asst. U. S. Atty., both of Atlanta, Ga.

UNDERWOOD, District Judge.

On September 24, 1937, an action for libel was filed in this court against. One 1936 Model Ford De Luxe Tudor Automobile, Motor No. 18—2742791, alleging that it was seized on the 15th day of March, 1937, by investigators of the Alcohol Tax Unit, while being used by Robert L. McFarland in the removal of ten gallons of untaxpaid distilled spirits, in violation of R. S. § 3450, 26 U.S.C.A. §§ 1156, 1441.

The case was, on October 22, 1937, tried to a jury, which rendered a verdict finding the property guilty as alleged. A judgment decreeing the automobile condemned and forfeited to the United States was thereupon entered by the court.

Thereafter petitioner, Automobile Financing, Inc., filed its petition praying for the remission or mitigation of the forfeiture, on the ground that it had an interest in the automobile, arising out of a contract with a person who had no record or reputation for violating liquor laws, which it acquired in good faith, and that it had no knowledge or reason to believe that the automobile would be used in the violation of any laws relating to liquor.

The evidence showed that E. H. Matthews, an automobile salesman, sold said automobile, which he owned, to Robert L. McFarland and took the note and contract for the deferred payments in the name of William Robert Jenkins, retaining title to the automobile to secure the deferred payments. On the same date Matthews transferred and assigned to petitioner the note and contract in question and his title to the automobile. Petitioner had no knowledge or reason to believe that the automobile would be used for the violation of any law relating to liquor, and Jenkins did not have any record or reputation as a violator of such laws.

Jenkins was a barber, operating his own barbershop, and the owner of the home in which he was living. He had a good reputation for paying his debts, and there was no evidence of bad character.

The actual sale of the automobile by Matthews was to McFarland, and Jenkins' connection therewith was fictitious. McFarland went to Jenkins' shop and requested him to sign a note for him for the automobile, stating that his credit was not good. Jenkins never saw Matthews, and the dealings of Matthews were entirely with McFarland, though the papers were made out in the name of Jenkins. McFarland made the cash payment and all other payments that were made. All deferred payments were made through the Trust Company of Georgia to petitioner in regular course of business, and petitioner never came into contact with Jenkins nor knew of McFarland's connection with the automobile or transaction.

When Matthews asked petitioner to purchase the note, petitioner did not rely on Matthews to make an investigation of Jenkins, but undertook itself to get such information. It made a bona fide effort to get information about the only purchaser it knew in the transaction. Petitioner kept a record in its office of all persons known to be bootleggers or to have a record or reputation for dealing in liquor, and it was its practice not to finance any paper where the purchaser had such reputation or record. Petitioner examined its own records and the name of Jenkins did not appear thereon. Petitioner further asked the Credit Service Exchange in Atlanta for a report on Jenkins, which it received and which showed that Jenkins was the proprietor of his own barbershop and owned the home where he lived and that his credit and character rating was good. W. J. Hogan, office manager of Rankin-Whitten Company, from whom, as rental agent, Jenkins rented his barbershop, was also asked about Jenkins, and he reported that Jenkins was straight and industrious, and paid his bills, and had no bad reputation or record of any kind so far as he knew. The evidence showed that these facts about Jenkins were true. Petitioner did not, however, contact Jenkins or inquire whether he was in possession of the automobile or make inquiries about him at the offices of the city, state, or federal officers.

The remission or modification of the forfeiture in a case of this kind can only be

granted upon compliance with the following conditions precedent:

"(a) Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture,

"(b) In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters, of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of such locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation." 27 U.S.C.A. § 40a.

■ Petitioner proved compliance with the two first conditions of subdivision (b), and the questions here presented are whether its failure to comply literally with the third condition is excused by the fact, clearly established, that Jenkins had no record or reputation for violating laws of the United States or any state relating to liquor; and whether petitioner, in the circumstances of this case, was required to investigate the reputation and record of McFarland, who did have a record or reputation for violating both United States and state liquor laws,

but who was unknown to petitioner in the transaction.

The failure of petitioner to obtain or seek such information from the headquarters of the sheriff, chief of police, and federal officers is not fatal to its case, since the evidence shows, and the government concedes, that there was no such record or reputation, but, on the contrary, that Jenkins had a good reputation. The mere failure to make such inquiry worked no harm, but inquiry is important where such record exists, since a person acts at his own risk in failing to inquire, where there is such record.

■ But, taking the case as one where the conditions precedent have been fulfilled, it still remains a matter of discretion whether the court will remit or mitigate the forfeiture, since such action is not mandatory, but within the judicial discretion of the court, and each case depends upon its own facts. United States v. One Ford Automobile, D. C., 20 F.Supp. 44; C. I. T. Corporation v. United States, 4 Cir., 86 F.2d 311; United States v. One 1935 Dodge Rack-Body Truck, etc., 2 Cir., 88 F.2d 613.

Treating this case, then, as one calling for the exercise of the court's discretion, the evidence must be examined to see whether or not it discloses facts which would justify, within the judicial discretion of the court, a remission or modification of the forfeiture.

■ I find that petitioner acted in good faith, thinking it was dealing with Jenkins and that he was a man of good reputation and record and not knowing that McFarland had anything to do with the transaction. Matthews, however, did know McFarland's record and reputation and did collude with him in the fictitious sale making Jenkins the ostensible purchaser. Petitioner was not aware of these facts and did not make Matthews its agent for investigating the character of the purchaser, but made its own investigation. It appears, therefore, that it acted in good faith, but the law requires something more than the exercise of good faith and requires that finance companies take reasonable precautions against fictitious sales where the same can be checked by the exercise of reasonable care. The practice of making fictitious sales for the benefit of bootleggers and transferring the title papers to an innocent finance company has grown to such an extent as to embarrass the enforcement of the revenue laws, and,

510

while care should be exercised to relieve innocent owners against harsh condemnation of their property, nevertheless the power to do so should not be so loosely exercised as to give encouragement to violators of internal revenue laws. The immunization of an automobile against forfeiture by such schemes would be simply forcing the court to play its prearranged and expected role in ordering a release. "In a case like this the interest of citizens must be subordinated to the exigencies of government, as for many years heretofore." United States v. 1935 Ford Coupe, D.C., 17 F.Supp. 331, 333.

However, considering this case on its own facts and in the light of the finding of good faith on the part of petitioner and the fact that it did make its own investigation of the only person it knew in the transaction as purchaser of the automobile, I think this is a case where the court should exercise its discretion and remit the forfeiture upon payment of all charges against the automobile and costs of court. Let an order be entered accordingly.